IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 11-2460  EMSL

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

LELAND BEASLEY

        Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Missouri
District Court No. 4:10 CR 119


The Honorable Carol E. Jackson
United States District Judge Presiding

**BRIEF OF APPELLANT-DEFENDANT**

Nanci H. McCarthy
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
(314) 241-1255
ATTORNEY FOR DEFENDANT-APPELLANT

Nina B. Chasnoff, a third year law student at Saint Louis University, substantially
assisted in the preparation of this brief.

## SUMMARY AND REQUEST FOR ORAL ARGUMENT

On April 15, 2011, Appellant Beasley was convicted of eight counts of production of child pornography, two counts of attempted production of child pornography, and two counts of possession of child pornography. The district court erred in denying, in part, Beasley's motion to suppress evidence. The district court also erred in denying Appellant Beasley's motion for a bill of particulars. Furthermore, the district court imposed a substantively unreasonable sentence and erred in applying enhancements pursuant to 2G2.1(b)(5) and 2G2.1(b)(1)(A) to Beasley's sentence. In addition, the district court erred by allowing lay opinion testimony not based on the personal knowledge of the witness. Oral argument will permit full presentation on the issues and Appellant Beasley requests 10 minutes for oral argument.

ii

# TABLE OF CONTENTS

PAGE(S)

SUMMARY AND REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT OF ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT

    I. The district court erred in denying, in part, Beasley's motion to suppress evidence and statements obtained in violation of his rights under the Fourth Amendment and *Miranda* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    II. The district court erred in denying Beasley's motion for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). . . . . . . . . . . . . . . . . . .39

    III. The district court committed procedural error when applying two sentencing enhancements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

    IV. The district court erred by imposing a substantively unreasonable sentence, because the sentence is greater than necessary to accomplish the aims of sentencing set forth in 18 U.S.C. §3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . .48

Appellate Case: 11-2460      Page: 3      Date Filed: 09/26/2011 Entry ID: 3832991

V. The district court erred by allowing Douglas, a lay person, to give opinion testimony as to the ages of Gamestation customers. . . . . . . . . . . . . . . . . . . . . .51

VI. The district court abused its discretion in giving the Eight Circuit Model Reasonable Doubt Instruction which includes the "mere possibility of innocence" language. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

PROOF OF SERVICE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

ADDENDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

iv

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES CITED

*Arizona v. Hicks*, 480 U.S. 321 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*California v. Beheler*, 463 U.S. 1121 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Chavez v. Martinez*, 538 U.S. 760, (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25, 29

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) . . . . . . . . . . . . . . . . . . . . . . . . .17

*Dickerson v. United States*, 530 U.S. 428 (2000) . . . . . . . . . . . . . . . . . . . . . . . . .31

*Doe v. United States*, 487 U.S. 201 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Frazier v. Cupp*, 349 U.S. 731 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Gall v. United States*, 552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . .xi, 12, 44, 49

*Hamling v. United States*, 418 U.S. 87 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . xi, 40

*Harris v. New York*, 401 U.S. 222 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .50

*Illinois v. Rodriguez*, 497 U.S. 177 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*In re Winship*, 397 U.S. 358 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .xi, 53

*Jenner v. Smith*, 982 F.2d 329 (8th Cir.), *cert. denied*, 510 U.S. 822 (1993) . . . . . . .32

*North Carolina v. Pearce*, 395 U.S. 711 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . .44

*Oregon v. Elstad*, 470 U.S. 298 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

*Pennsylvania v. Muniz*, 496 U.S. 582 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28, 29

*Rhode Island v. Innis*, 446 U.S. 291 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33, 37

Appellate Case: 11-2460     Page: 5     Date Filed: 09/26/2011 Entry ID: 3832991

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Sullivan v. Louisiana*, 508 U.S. 275 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .57

*Taran v. United States*, 88 F.2d 54 (8th Cir. 1937) . . . . . . . . . . . . . . . . . . . . . . . .42

*Thatsaphone v. Weber*, 137 F.3d 1041 (8th Cir), *cert. denied*, 523 U.S. 1130 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

*United States v. Arenal*, 768 F.2d 263 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . .40

*United States v. Banks*, 514 F.3d 769 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . .24

*United States v. Barry*, 853 F.2d 1479 (8th Cir. 1988) . . . . . . . . . . . . . . . . . . . 14, 19

*United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . . . .51

*United States v. Booker*, 543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi, 49

*United States v. Caputo*, 288 F.Supp 923 (N.D. Ill. 2003) . . . . . . . . . . . . . . . . . . . .40

*United States v. Carca-Carrasquillo*, 483 F.3d 124 (1st Cir. 2007) . . . . . . . . . . . . .49

*United States v. Carter*, 884 F.2d 368 (8th Cir. 1989) . . . . . . . . . . . 31, 33, 34, 37, 38

*United States v. Clay*, 579 F.3d 919 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . .12

*United States v. Densberger*, 285 Fed.Appx. 926 (3rd Cir. 2008) . . . . . . . . . . . . . .45

*United States v. Densberger*, No.00295, 2007 WL 1099052, at *5 (M.D.Pa. 2007)..45

*United States v. Dreamer*, 88 F.3d 655 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . 12, 53

*United States v. Dunn*, 480 U.S. 294 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*United States v. Faulkner*, 636 F.3d 1009 (8th Cir. 2011) . . . . . . . . . . . . . . xi, 51, 52

**vi**

*United States v. Galceran*, 301 F.3d 927 (8th Cir. 2002) . . . . . . . . . . . . . . . 32, 34, 35

*United States v. Haack*, 403 F.3d 997 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . .49

*United States v. Haas*, 583 F.2d 216 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . .40

*United States v. Hernandez*, 299 F.3d 984 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . .41

*United States v. Hines*, 387 F.3d 690 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . 24-25

*United States v. Hubbell*, 530 U.S. 27 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*United States v. Jarrett James*, 571 F.3d 707 (7th Cir. 2009) . . . . . . . . . . . . .x, 15-16

*United States v. LeBrun*, 363 F.3d 715 (8th Cir. 2000) . . . . . . . . . . . . . . . .31, 32, 34

*United States v. Lee*, 232 F.3d 653 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 41-42

*United States v. Livingstone*, 576 F.3d 881 (8th Cir. 2009) . . . . . . . . . . . . . . . .xi, 12

*United States v. Mar James*, 353 F.3d 606 (8th Cir. 2003) . . . . . .x, 13, 18, 19, 20, 21

*United States v. Martin*, 291 Fed.Appx. 765 (6th Cir. 2008) . . . . . . . . . . . . . . . . . .48

*United States v. Matlock*, 415 U.S. 164 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*United States v. Muhammad*, 604 F.3d 1022 (8th Cir. 2010) . . . . . . . . . . . . . . . . . .23

*United States v. Patane*, 542 U.S. 630 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 25, 28

*United States v. Peoples*, 250 F.3d 630 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . .xi, 12

*United States v. Perkins*, 748 F.2d 1519 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . .41

*United States v. Petty*, 62 F.3d 265 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . .44

*United States v. Pressler*, 610 F.2d 1206 (4th Cir. 1979) . . . . . . . . . . . . . . . . . . . . .14

*United States v. Rosso*, 179 F.3d 1102 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 53

*United States v. Saenz*, 474 F.3d 1132 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . 24-25

*United States v. Smith*, 591 F.3d 974, 982 (8th Cir. 2010) . . . . . . . . . . . . . . . . . . . .51

*United States v. Stephenson*, 924 F.2d 753 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . .40

*United States v. Trower*, 285 F.Appx. 321 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . . .24

*United States v. Tucker*, 137 F.3d 1016 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . .12

*United States v. Whitehead*, 176 F.3d 1030 (8th Cir. 1999) . . . . .xi, 12, 53, 55, 55, 56

*Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . .42

*Victor v. Nebraska*, 511 U.S. 1 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .54

## STATUTES CITED

18 U.S.C. §2251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .x, 1

18 U.S.C. §2252(a)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .x, 1

18 U.S.C. §3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 48-49

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

## SENTENCING GUIDELINES CITED

U.S.S.G. § 2G2.1(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, 10, 45

U.S.S.G. § 2G2.1(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii, 10, 46-47

## OTHER AUTHORITIES CITED

Eight Circuit Model Jury Instruction § 3.11 (2003) . . . . . . . . . . . . . . . . . . . . . . . .53-54

**viii**

Fed. R. Crim. P. 7(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

Fed. R. Evid. 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .51

Fed. R. Evid. 701(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .51

Kevin O'Malley, et al., Federal Jury Practice and Instructions: Criminal
§12.10 (Fifth ed. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55-56

U.S. Const. amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 17

U.S. Const. amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 44

## JURISDICTIONAL STATEMENT

Appellant Beasley brings this direct appeal from the final judgment imposed by the Honorable Judge Carol E. Jackson of the District Court of the Eastern District of Missouri. The United States invoked the district court's jurisdiction under 18 U.S.C. §2251(a) and 18 U.S.C. §2252(a)(5)(B). Judge Jackson sentenced Beasley to 3,480 months (290 years) imprisonment followed by lifetime supervised release. Beasley timely filed his notice of appeal on July 7, 2011.

Beasley invokes this Court's jurisdiction under 28 U.S.C. §1291. To Beasley's knowledge, none of the proceedings below have been reported.

Appellate Case: 11-2460     Page: 9     Date Filed: 09/26/2011 Entry ID: 3832991

## STATEMENT OF ISSUES

I.   THE DISTRICT COURT ERRED IN DENYING, IN PART, BEASLEY'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS OBTAINED IN VIOLATION OF HIS RIGHTS UNDER THE FOURTH AMENDMENT AND *MIRANDA*.

      *United States v. Jarrett James*, 571 F.3d 707 (7th Cir. 2009)
      *United States v. Mar James*, 353 F.3d 606 (8th Cir. 2003)

II.  THE DISTRICT COURT ERRED IN DENYING BEASLEY'S MOTION FOR A BILL OF PARTICULARS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 7(f).

      *United States v. Livingstone*, 576 F.3d 881 (8th Cir. 2009)
      *Hamling v. United States*, 418 U.S. 87 (1974)

III. THE DISTRICT COURT COMMITTED PROCEDURAL ERROR WHEN APPLYING TWO SENTENCING ENHANCEMENTS.

      *Gall v. United States*, 552 U.S. 38 (2007)

IV.  THE DISTRICT COURT ERRED BY IMPOSING A SUBSTANTIVELY UNREASONABLE SENTENCE, WHICH IS GREATER THAN NECESSARY TO ACCOMPLISH THE AIMS OF SENTENCING SET FORTH IN 18 U.S.C. § 3553(a).

      *Gall v. United States*, 552 U.S. 38 (2007)
      *United States v. Booker*, 543 U.S. 220 (2005)

V.   THE DISTRICT COURT ERRED BY ALLOWING TIMOTHY DOUGLAS, A LAY PERSON, TO GIVE OPINION TESTIMONY AS TO THE AGES OF GAMESTATION CUSTOMERS.

      *United States v. Peoples*, 250 F.3d 630 (8th Cir. 2001)
      *United States v. Faulkner*, 636 F.3d 1009 (8th Cir. 2011)

VI.  THE DISTRICT COURT ABUSED ITS DISCRETION IN GIVING THE EIGHTH CIRCUIT MODEL REASONABLE DOUBT INSTRUCTION WHICH INCLUDES THE "MERE POSSIBILITY OF INNOCENCE LANGUAGE.

      *In re Winship*, 397 U.S. 358 (1970)

x

# STATEMENT OF THE CASE

**Procedural**

Appellant Beasley was convicted by a jury of eight counts of production of child pornography, two counts of attempted production of child pornography, and two counts of possession of child pornography in violation of 18 U.S.C. §2251(a) and 18 U.S.C. §2252A(a)(5)(B).

On July 5, 2011, Beasley was sentenced to 3,480 months (290 years) incarceration plus lifetime supervised release.

On July 7, 2011 Beasley timely filed a Notice of Appeal.

**Facts**

Leland Beasley was born on February 20, 1968 and is presently 43 years old. Presentence Investigation Report (hereinafter "PSR"), 21. He graduated from Roosevelt High School in 1968 and served two years in the United States Navy, where he was ranked E4 and received an honorable discharge. PSR, 24. Prior to his arrest in this matter Beasley had never served any period of incarceration and has no prior criminal convictions. Sentencing Transcript (hereinafter "Sent. Tr.), 706, 710.

Beasley was the owner of a store, Gamestation Sector 19, where he sold video games in addition to time on the in-store video gaming systems. Trial

Transcript (hereinafter "Tr."), 570-71. Occasionally "lock-ins" were hosted at the store, allowing customers to pay a flat rate for unlimited use of the store's gaming systems overnight. Tr., 572-73. On January 5, 2009, Detectives Guinn and Cavaletti, having been notified of accusations lodged against Appellant, visited him unannounced around 4:00 p.m. at his place of business. *Transcript of Hearing* (hereinafter "*TH*"), 8. According to Detective Guinn's testimony, the Detectives arrived at the store, asked to speak with Appellant, instructed the customers and employees to leave[1], then apprised him of their investigation. *TH*, 8-13, 25-27. Specifically, the officers informed Beasley that "allegations had been made against him by one of the children in the store." *TH*, 13. Almost immediately upon arrival, the officers presented a consent to search form for Beasley's personal laptop computer, which he signed; analysts discovered no incriminating evidence on the laptop. *TH*, 9-13, 21. Subsequently, officers escorted Beasley in their vehicle to the police station in Clayton. The 10-mile trip took approximately thirty-minutes (the officers testified that they arrived after 5:00p.m.). *TH*, 7, 14. Sergeant Guinn testified that he did not recall if Beasley was placed in the front or

---

[1] At the hearing, Sergeant Guinn answered "Yes" to Federal Defender Nanci McCarthy's question: "Did you ask the customers to leave the store before you began to talk to Mr. Beasley?" *TH*, 26. However, at trial Sergeant Guinn answered "I believe he (Beasley) did" to Federal Defender Nanci McCarthy's question: "And you asked the customers to leave the store?" Tr., 202.

**2**

back of the vehicle. *TH*, 28. Ninety minutes after first approaching appellant, while sitting with two officers in a small interrogation room measuring five-by-eight feet[2] at Police Headquarters, the officers presented Beasley with *Miranda* warnings. *TH*, 15-18. Beasley signed a waiver. *TH*, 15-18. Around 7:45p.m., after another two hours of questioning and with no counsel present, Beasley informed the officers of a prior charge of which he was acquitted after a jury trial, as well as a prior arrest, then made a comment about "needing help" and "being embarrassed." *TH*, 20. The officers did not clarify why he needed help or why he was embarrassed. *TH*, 29. Although the officers obtained no new evidence during the course of this encounter, they arrested Beasley and conveyed him to the Justice Center. Subsequently Beasley was charged with Child Molestation and Statutory Sodomy; Beasley has remained in custody since. *TH*, 30-31.

During further investigation Beasley's employee, Timothy Douglas (hereinafter "Douglas"), informed the officers that he spoke with Beasley after his arrest, and that Beasley had instructed him to remove several personal items from the store and take them to Beasley's mother's (Leslie Moss's) residence. Tr., 448. Beasley wanted this done for safekeeping in case of a burglary. Tr., 583-83. On

---

[2] Sergeant Guinn testified that the room was "approximately five foot by eight foot size," and had a "small table in there and normally there's two chairs but [they] brought another chair in there, there was three of them." *TH*, 15.

**3**

January 16, 2009, Detective Guinn visited Moss at her place of employment to retrieve recording equipment and clothes delivered by Douglas, specifically any cameras[3] she was holding for Appellant. *TH*, 33. Although she was with a client, the detective made his presence known and waited until Moss could converse with him. *TH*, 32-33. He stated his desire to accompany her home and for her to surrender her son's belongings, including the recording equipment in question. *TH*, 32. At her residence, Moss led Detective Guinn to a back bedroom, where he retrieved several items, including a "canvas bag that had a DVD recorder in it and Sony camera, digital camera, a Sony digital recorder along with a strong box," as well as a duffel bag. *TH*, 22, 34-35. Although both the detective and Moss knew the items were Beasley's[4], he nevertheless asked her "permission for those items," and subsequently searched then seized them. *TH*, 34, 24. According to Sergeant Guinn's testimony, he "went through" Beasley's duffel bag at Mother's house, and in response to Defense Attorney McCarthy's question "So you did in fact look inside the bag...?" he responded, "Yes, I did." *TH*, 35. Additionally, he testified that he made the decision to leave the duffel bag at Mother's residence after

---

[3] Sergeant Guinn testified he was looking for "seven items," one of which was a camera. *TH*, 33.

[4] Sergeant Guinn testified he knew the items were Beasley's and not Moss's. *TH*, 34.

**4**

having searched it and evaluated the contents, having found nothing incriminating inside. *TH*, 35. Furthermore, although more than ten days had elapsed since the officers learned Douglas had transferred the items to Moss, the officers nevertheless neglected to obtain a search warrant to search and seize the items.

On January 19, 2009, Beasley had been in custody at the St. Louis County Justice Center for two weeks, having been indicted by the state with several counts of sexual offenses against a minor and having been appointed an attorney on these charges. Detectives removed Beasley at 12:24p.m. and conveyed him in handcuffs from the jail to the police station[5]. *TH*, 53. At the station, Detectives interrogated Beasley about the contents of a camera bag, lock box, and various recording instruments, which officers had unpacked from the bag and displayed on the table. *TH*, 45-51, 53-57. Although he was in custody and charged, officers neither *Mirandized* Beasley nor allowed him the assistance of his already-appointed counsel, Public Defender Christine Goulet. *Memorandum and Recommendation of Magistrate* (*MRM*), 18. After a period of interrogation, at 12:50p.m., Beasley eventually signed a consent to search the items, indicating the camera bag and

---

[5] Officers testify Beasley was removed "at approximately 12:30p.m."; the log at the Justice Center indicates he was removed at exactly 12:24p.m..

**5**

recording equipment were his[6]. *TH*, 45, 55. Subsequently, the officers read

Beasley his *Miranda* rights, which he refused to waive, stating something to the

effect of: "I don't want to talk to you; I want an attorney." *TH*, 57. The officers

then returned Beasley to jail at 1:30p.m.. *TH*, 51, 58. Beasley filed a motion to

suppress evidence and memorandum of law on October 14, 2010. There were two

pretrial hearings on this motion, on August 20, 2010 and December 9, 2010. On

March 2, 2011 the United States Magistrate Judge issued a Report and

Recommendation denying, in part, Appellants motion to suppress. The district

court agreed that Beasley's Sixth Amendment right to counsel had attached on

January 19, 2009 and that statements as to ownership of the box and cameras

should be suppressed, however the rest was denied. MRM, 18-19. Beasley timely

filed an objection on March 14, 2011, however, the Magistrate Judge's findings

were sustained, adopted, and incorporated by the court on April 1, 2011.

Furthermore, Beasley timely objected when the evidence was presented at trial.

On March 3, 2010 Beasley was indicted on seven counts in open court. On

July 1, 2010 a Second Superceding Indictment was returned in this case charging

---

[6] Though some consent forms do not, this particular one also "acknowledged ownership" of the items in question (*Police Report*, 29) and Sergeant Brillos agreed in testimony that he was "in fact asking of those were [Beasley's] items to consent to search." *TH*, 56.

**6**

Beasley with eleven counts. The time frame listed in count VII was April 11, 2002 through January 5, 2009. In addition, the time frame in counts I through VIII had a time frame of March 1, 2006 through January 5, 2009. On July 23, 2010 Beasley filed a motion for a bill of particulars. A Third Superseding Indictment was filed on January 27, 2011, adding more charges but not changing the time frames of the alleged crimes. The court denied Beasley's motion on March 11, 2011 and Beasley filed an objection to the ruling on March 30, 2011.

The trial on this matter began on April 11, 2011 and lasted four days. At trial Douglas testified for the government. During his direct testimony he was asked, in relation to Gamestation, "[b]y the age group of the people that went there, about how old were they?" Tr., 442. The court permitted Douglas to answer over Beasley's objection. *Id*. Beasley is alleged to have produced videos which depict minors "in a lascivious display [of their] genitals." PSR, 1-3. At trial Detective Patrick Wilds testified as an expert in computer forensics for the prosecution and during his cross-examination he acknowledged that the date and time on the video camera allegedly used by Beasley can be reset manually. Tr., 404. During the jury charge conference on April 15, 2011, Beasley objected to the proposed jury instruction defining a "reasonable doubt' and offered two alternatives to model instruction 3.11. Tr., 621-22. The court overruled this

Appellate Case: 11-2460     Page: 17     Date Filed: 09/26/2011 Entry ID: 3832991

objection stating that while the alternatives proposed by Beasley accurately state the law, they were not preferable to the model instruction.  Tr., 622-23.

The Presentence Investigation Report (hereinafter "PSR") proposed enhancements be applied to the offense level used to calculate the Guidelines range.  Among other enhancements, the PSR asserted that B.E.N. was under the age of 12 when the video images at issue were produced, therefore an enhancement pursuant to 2G2.1(b)(1)(A) should apply.  PSR, p. 13 ¶ 55.  Furthermore, according to the PSR, Beasley exercised care, custody, or supervisory control over the minors in Counts I-VI, and therefore an enhancement under 2G2.1(b)(5) should apply.  PSR, p. 13-15 ¶ 57, 65, 72, 80, 87, 94.  Prior to sentencing Beasley filed written objections denying that B.E.N. was under 12 and also denying that the minors  in counts I-VI were under his care, custody, or supervisory control.  District Court Document 211, p. 1-2.  Judge Carol E. Jackson sentenced Beasley to 3,480 months (290 years) incarceration plus lifetime supervised release on July 5, 2011.  Sent. Tr., 712.  Beasley renewed his objections to these enhancements at the sentencing hearing.  Sent. Tr., 699, 701-02.  The objections were overruled and the enhancements applied.  Sent. Tr., 701, 703-04.  Furthermore, at the sentencing Beasley timely objected to the sentence as it is greater than necessary to achieve the sentencing objectives and there was not

**8**

sufficient information to explain why such a sentence was imposed. Sent. Tr., 718.

**9**

# SUMMARY OF ARGUMENT

The district court erred when it denied, in part, Beasley's motion to suppress. The evidence and statements used against Appellant were obtained in violation of his rights under the Fourth Amendment and *Miranda*. All should have been suppressed.

The district court abused its discretion by failing to grant Beasley's motion for a bill of particulars. The time frames in the indictment were so broad and lacking in specificity that Beasley was unable to fully prepare for trial or avoid or minimize the dangers of surprise at trial.

The district court procedurally erred when applying sentencing enhancements pursuant to 2G2.1(b)(1)(A) and 2G2.1(b)(5). 2G2.1(b)(1)(A) was applied though no evidence was presented to show that the videos were produced before B.E.N. attained the age of 12. 2G2.1(b)(5) does not apply to Beasley, he was acting merely as a shop owner and did not exercise care, custody, or control over his customers.

The final sentence imposed by the district court was unreasonable in that the court failed to fully consider the §3553(a) factors. Failure to fully consider a relevant factor or giving significant weight to an improper factor illustrates a clear error of judgment and requires remand for resentencing.

10

The district court abused its discretion by allowing Douglas to testify as to the age of the customers at Gamestation as his testimony was not based on his personal knowledge.

The district court also erred by refusing Beasley's proposed jury instructions on reasonable doubt. The proposed jury instructions were timely offered and were correct statements of the law and their refusal was prejudicial.

Appellate Case: 11-2460    Page: 21    Date Filed: 09/26/2011 Entry ID: 3832991

## STANDARD OF REVIEW

In reviewing a district court's denial of a motion to suppress, the court of appeals reviews factual findings for clear error and legal conclusions *de novo*. *United States v. Clay*, 579 F.3d 919, 931 (8th Cir. 2009).

The Court of Appeals reviews the district court's denial of a motion for a bill of particulars for an abuse of discretion. *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009).

The Court of Appeals reviews a sentence for procedural and substantive reasonableness under an abuse of discretion standard. *Gall*, 552 U.S. at 46.

When reviewing the decision whether to admit or exclude lay testimony the court of appeals reviews for abuse of discretion. *United States v. Peoples*, 250 F.3d 630, 639 (8th Cir. 2001).

The Court of Appeals "reviews a district court's decision to grant or deny a request for a particular jury instruction under an abuse of discretion standard, taking into account the full context of the charge." *United States v. Whitehead*, 176 F.3d 1030, 1037 (8th Cir. 1999)(citing *United States v. Tucker*, 137 F.3d 1016, 1036 (8th Cir. 1998); *United States v. Dreamer*, 88 F.3d 655, 658 (8th Cir. 1996)).

Appellate Case: 11-2460    Page: 22    Date Filed: 09/26/2011 Entry ID: 3832991

# ARGUMENT

I. THE DISTRICT COURT ERRED IN DENYING, IN PART, BEASLEY'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS OBTAINED IN VIOLATION OF HIS RIGHTS UNDER THE FOURTH AMENDMENT AND *MIRANDA*.

Beasley raised the issue of the admissibility of the evidence and statements via pre-trial motions. The magistrate denied, in part, Beasley's motion to suppress evidence, this ruling was adopted by the district court over Beasley's objections.

At trial timely objections to the admission of the evidence and statements were made but the items and statements were allowed into evidence.

**A. Beasley's mother, Leslie Moss, had no authority to consent to search or seizure of his belongings and the seized items should have been suppressed from evidence.**

The district court incorrectly found that Moss had authority to consent to the seizure of Beasley's belongings, and erred by failing to suppress the evidence. In addition, the court erred in finding officers did not search the items before removing them from Moss's home, without proper consent or warrant. The search and seizure of Beasley's belongings violated his Fourth Amendment rights and all evidence should have been excluded. "The Fourth Amendment requires that a warrant be issued by a neutral magistrate on probable cause before an item can be searched and seized." *United States v. Mar James*, 353 F.3d 606, 613 (8th Cir. 2003); U.S. CONST. amend. IV. Consent can be a valid exception to the warrant requirement (*Schneckloth*

13

*v. Bustamonte*, 412 U.S. 218, 222 (1973)), but must be granted by someone who either has authority over the item or a sufficient relationship to the item to be searched. *United States v. Matlock*, 415 U.S. 164, 171 (1974).

**1. Moss lacked authority to consent to a seizure of Beasley's belongings.**

Beasley called his employee, Douglas, and had him retrieve some personal items, clothing and recording equipment, and take them over to Moss's house for safekeeping in case of a burglary. Tr., 583-84. Moss was simply protecting these items for Appellant, who desired to retain control over them. In fact, this was the sole reason Beasley had them transferred to a safer location, had them enclosed in opaque bags, and had the lock box secured. In this situation, Moss was merely a bailee who agreed to house the items. A bailee does not have authority over an item when holding it "solely for safekeeping," because "such possession g[ives] [the bailee] no common authority." *United States v. Barry*, 853 F.2d 1479, 1482 (8th Cir. 1988) (citing *United States v. Pressler*, 610 F.2d 1206, 1213-14 (4th Cir. 1979) (internal quotations omitted)). When an item is in the possession of a bailee, the owner retains a reasonable expectation of privacy protected by the Fourth Amendment when he or she clearly demonstrates intent to control the item. *Id*. at 1481-82.

Notwithstanding an individual's authority to consent to a search of his or her own residence, and seizure of items found there, here Moss had no authority to

14

consent to Beasley's items' seizure, because she did not have common authority over the items. *Matlock*, 415 U.S. at 171. As Moss was not in control of Beasley's personal belongings and was merely a bailee who agreed to keep Beasley's personal belongings for safekeeping; the exception allowing a *seizure* of said items does not apply. Essentially, Moss was instructed and agreed to protect Beasley's belongings, which he still retained a property and privacy interest in. Because of this any seized items should not have been allowed into evidence.

The district court mistakenly concluded that *United States v. Jarrett James*, 571 F.3d 707 (7th Cir. 2009) controls. In *James* the Seventh Circuit did allow the seizure of the items in that situation, however the facts here are easily distinguishable. First, and most obviously, in *James* the police searched the items pursuant to a search warrant. *Id*. at 714. Secondly, the Seventh Circuit in *James* understood that the defendant had abandoned his belongings when his mother took possession of them. *Id*. at 713-14. In addition, *James* did not allow the search of the items without a search warrant, which is what occurred here. As such, James does not establish that Moss could consent to Beasley's belongings' search or seizure.

In *James*, the defendant once lived with his mother, then moved into an apartment, but when his lease expired, his mother personally and of her own volition retrieved all of his belongings, including a safe, and brought them back to her

15

residence; she kept the items for several years, even after her son moved out of state. *Id*. at 710-11.  After the defendant confessed that his safe contained a gun against his mother's wishes, the mother called the police, asking for assistance to have the gun removed from her home.  *Id*. At 711.  Officers seized the safe with the mother's permission, after she gave them the keypad code to unlock it, but the officers did not search the safe until they had secured a warrant to do so. *Id*.

The court in *James* reasoned that although the safe itself belonged to the defendant, the fact that the mother retrieved it from being abandoned, kept it for several years, moved it from one location to another, knew the secret access code, and desired to have the contents removed because she opposed having a gun in her home, combined with the fact that an illegal gun used in a robbery is a threat to public safety, all granted her authority to consent to the safe's seizure. *Id*. At 713-14.  Moreover, the safe was not opened until a warrant issued, so the search itself was valid.  *Id*. At 714.

Here, Moss did not rescue the items from abandonment, rather they were brought to her for safekeeping.  Moss was not aware of what was on the items, in the bags, nor was she aware of the code to the lock box.  Perhaps more importantly, even assuming *arguendo* Moss had authority to consent to the *seizure* of Beasley's

16

belongings, no search warrant granted law enforcement agents the authority to *look at* or *search* the items, as was done here.

### 2. Moss had no authority to consent to the items' search and the evidence should have been suppressed.

Further, the police searched Beasley's belongings while in Moss's home. The officers unzipped and rummaged through Beasley's duffel bag, removing its contents. Sergeant Guinn testified that after he "went through" Beasley's duffel bag and found nothing incriminating, he decided not to seize it. Tr., 35. In addition, before even attempting to obtain a search warrant or consent, officers unpacked the camera bag and laid out the contents on a table at the station. Tr., 47. Though Moss may have had the authority to allow the officers to view the items in her home, her consent did not extend to a search of Beasley's property in her house. Any such search is a Fourth Amendment violation, the fruits of which should have been suppressed by the district court. Although items can be lawfully found and even seized on a third party's premises if that person consents to the search of his or her premises, a warrant based on probable cause is still required for a search of those items. *Coolidge v. New Hampshire*, 403 U.S. 443, 513-14 (1971) (citing *Frazier v. Cupp*, 394 U.S. 731, 789 (1969)).

The district court erred in finding there was no search of Beasley's items while the officers were at Moss's home. Because Moss did not have the authority to

17

consent, the search was unlawful and a violation of Beasley's Fourth Amendment rights.

Moss lacked common or actual authority to consent to a search of Beasley's belongings. "Common authority is a function of mutual use, joint access, and control, and is a question of fact." *United States v. Mar James*, 353 F.3d 606, 613 (8th Cir. 2003)(internal citations omitted); see also *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (holding that a former co-tenant does not have actual authority over common spaces when she lived elsewhere, did not contribute to rent, and never invited friends over, even though she had a key, left belongings there, and sometimes still spent the night). Co-residents can sometimes be considered to share common authority over jointly occupied living spaces "because parties expect intrusions into each other's limited space as a function of communal living." *Mar James*, 353 F.3d at 613.

Beasley's employee entrusted Moss with Beasley's personal belongings per his express instruction. This did not give Moss authority over those items. Even if Moss had some authority over parts of the house she and Beasley may have shared as co-residents in the past, this common authority would only extend to shared spaces and items, not to Beasley's personal belongings. As a bailee, Moss does not have "mutual use, joint access, and control" of his recording equipment, duffel bag, and lock box. *Id*. at 613-14. Physical access to the camera bag, recording equipment, and duffel bag

18

does not equate with authority over those items. Simply, "the mere act of storage" does not grant a bailee authority, particularly when the owner evidences an intent to remain in control of the item. *Id.* at 614. "One does not cede dominion over an item to another just by putting him in possession" of it; regardless of whether a bailee *could potentially* access the interior of concealed items (such as by picking a lock), "this kind of access does not mean the bailee has *actual* authority to look at the contents of the items, or to consent to another's searching them." *Id*. (emphasis added).

Moss's lack of authority is further bolstered by the fact that she denied Beasley lived at her residence: according to the district court, "the Defendant did not live or stay at Moss's house, but sometimes used her address for legal purposes and for his drivers license." *MRM*, 5. Although co-residents can have common authority over shared spaces, if Beasley did not live there, nothing in the house would be subject to their common authority. Therefore, Moss had no authority to consent to a search of Beasley's personal items. Like in *Barry*, 853 F.2d at 1481-82, where the Eighth Circuit held that the defendant's manifested desire to retain control over his belongings rendered his privacy interest in the belongings intact, notwithstanding the fact that they were in the possession of a bailee, here, Beasley conveying his belongings to Moss for safekeeping did not jeopardize his privacy interests in them.

Appellate Case: 11-2460    Page: 29    Date Filed: 09/26/2011 Entry ID: 3832991

Because the Government cannot show that Moss had authority to do anything with Beasley's items beyond "mere storage," it failed to show actual authority for police to search Beasley's items. Moreover, although the Government asserts that the officers "did not search the property until defendant granted. . . permission," rummaging around in the duffel bag and evaluating the contents, as well as unpacking the camera bag, constitutes a search. Such a search was unlawful and a Fourth Amendment violation. All fruits of that search should have been excluded.

In addition, because officers knew Moss lacked *actual* authority, it is unreasonable for them to claim she had *apparent* authority to consent to a search of Beasley's belongings. "As the Supreme Court has stated, the rule for law-enforcement officers' reliance on a consenting party's apparent authority is not that they always be correct, but that they always be reasonable." *Mar James*, 353 F.3d at 615, (citing *Rodriguez*, 497 U.S. at 185-86 (internal quotations omitted). To determine the reasonableness of officers' reliance on apparent authority, the test is whether "the facts available to the officer at the time the consent is given warrant a person of reasonable caution in the belief that the consenting party had authority over the item to be searched." *Id.*, (citing *Rodriguez*, 497 U.S. at 188). Officers testified that they had been informed by Moss that Beasley's employee had entrusted her with Beasley's belongings, per his instruction, for safekeeping. Additionally, the Government noted

in its brief that they learned from Beasley's employee that Beasley had expressly instructed him to take specific items to his mother's residence. *Government Brief (hereinafter "GB")*, 6, 10.

Because officers knew this, they knew that Beasley wanted the items protected from others' access to them and that there was no accompanying invitation to view or share the contents with others. Douglas's lack of actual authority to search the items is clear, as he was authorized only to convey the items. It follows that if Douglas was instructed to remove the items and deliver them somewhere else for safekeeping, and not to look at them or show them to anyone else, then Moss also lacked authority to look at or consent to a search of the items. The officers knew that Beasley wanted the items moved in order to protect them from burglary, evidencing his desire to prevent others from accessing them. Knowledge that Beasley intended others to be excluded from accessing his belongings precludes any reasonable grounds to suggest that others could access them. Simply put, a theory of apparent authority is unreasonable. It is "not reasonable to rely on a certain theory of apparent authority, when the police themselves know what the consenting party's *actual* authority is." *Mar James*, 353 F.3d at 615 (original emphasis).

Apparent authority turns on whether it was reasonable for officers to think the person had authority; here, the officers' knowledge that Beasley instructed Douglas

Appellate Case: 11-2460    Page: 31    Date Filed: 09/26/2011 Entry ID: 3832991

to *protect* the items precludes any attempt to rely on a theory of apparent authority. Regardless of when the officers learned of Beasley's instruction to Moss to destroy the items, the fact that they knew Beasley had them removed to prevent someone else from taking them manifested the lack of authority for anyone to access them. Protecting something that belongs to you is an effort at maintaining control. The officers knew Beasley wanted his belongings protected, so it was unreasonable for the officers to claim Moss had apparent authority.

Because law enforcement agents knew Moss had no authority to consent to search or seizure of Beasley's camera bag and other items, her consent is invalid. The subsequent search was unlawful and a violation of Beasley's Fourth Amendment rights. Even if it could be argued that Moss had authority to allow the items' seizure from her home, the accompanying search is nevertheless unlawful; however, because Moss did not exercise control over the items, her consent to their seizure is also invalid. All such evidence should therefore have been excluded as fruit of the poisonous tree.

### 3. The items were not properly seized from Moss's home under the plain view exception and the evidence should have been excluded.

The district court erred in finding that the items were properly seized under the plain view doctrine. On January 16, 2009, officers visited Moss for the sole purpose of retrieving the items in question, and after asking for the items specifically, Moss

22

walked to another room in the back of her house, retrieved the named items, and returned to hand the officers the items they requested. "The plain-view exception allows officers to seize contraband or other evidence of a crime in limited situations," so long as three conditions are met: if (1) the officers are lawfully in a position from which they view the object; (2) the incriminating character of the object is immediately apparent; and (3) the officers have a lawful right of access to the object. *United States v. Muhammad*, 604 F.3d 1022, 1027 (8th Cir. 2010).

The district court concluded that "as soon as the police observed the two cameras and the lock box, they could seize the items because they were lawfully in their plain view." *MRM*, 10. However, by explicitly asking Moss to retrieve the "seven specific items" (*MRM*, 5) those items were not, in fact, in "plain view." As the Supreme Court has explained, "taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry," and in light of that reasoning held, "'looking at a suspicious object in plain view and *moving it even a few inches*' is much more than trivial for purposes of the Fourth Amendment." *Arizona v. Hicks*, 480 U.S. 321, 324-25 (1987) (emphasis added). Here, "when the police went to the mother's house and asked to see [the items]" (*MRM*, 9), they caused the items to be

Appellate Case: 11-2460    Page: 33    Date Filed: 09/26/2011 Entry ID: 3832991

moved more than "a few inches"; in fact, law enforcement agents improperly "manipulate[d] the physical environment within the home with the intent to uncover information."  *United States v. Trower*, 285 F.Appx. 321, 323-24 (8th Cir. 2008) (citing *Hicks,* 480 U.S. at 324-25; and distinguishing *United States v. Banks,* 514 F.3d 769, 773 (8th Cir. 2008) (where officers did not violate the "plain view" exception "merely by using their eyes") and *United States v. Dunn,* 480 U.S. 294, 305 (1987) (where officers did not violate the "plain view" exception by using a flashlight)).

By asking Moss for the items and prompting her to go to the back bedroom, retrieve, and then deliver those items, officers clearly "manipulated" the environment. This was an act much more involved than using a flashlight or even looking under a speaker in plain view for serial numbers, thus violating Beasley's Fourth Amendment rights.

### B. Beasley's January 19, 2009 consent to search the items law enforcement agents had obtained from Moss was involuntary and so should have been  excluded.

The district court erred in finding that Beasley's consent to search the items was voluntary.  "The voluntariness of a consent to search is a factual question" and it turns on whether the "consenting individual had a reasonable appreciation of the nature and significance of his actions."  *United States v. Saenz*, 474 F.3d 1132, 1136 (8th Cir. 2007)(internal quotations omitted).   "The voluntariness of a consent to

24

search is. . .reviewed for clear error." *Id*. at 1136 (citing *United States v. Hines*, 387 F.3d 690, 694 (8th Cir. 2004). The test for whether consent is voluntary involves a consideration of the totality of circumstances, including the following factors: 1) the defendant's characteristics such as age, general intelligence, and education; 2) whether he was intoxicated; 3) whether he had been advised of his *Miranda* rights; 4) whether he was aware of his rights; 5) the length of the detention; 6) whether officers were threatening in any way; 7) whether officers intimated any promises or misrepresentations; 8) whether the defendant was in custody or under arrest; 9) whether consent was given in public; 10) whether the defendant was silent during the search. *Id*. at 1137. "Those subjected to coercive police interrogations have an *automatic* protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial." *United States v. Patane*, 542 U.S. 630, 640 (2004) (citing *Chavez v. Martinez*, 538 U.S. 760, 769 (2003)).

Beasley was not only under investigation but also charged and indicted. He had been in custody for two full weeks when he was conveyed in handcuffs by two policemen from his cell at the Justice Center to the interrogation room at the police station. Law enforcement agents testified in court that they were aware Beasley was in custody and had been charged, in fact, St. Louis County had served the arrest

25

warrant. The prolonged conversation about the combination and ownership of the lock box prompted by officers in violation of Beasley's Fifth and Sixth Amendment rights to counsel enhanced the already coercive atmosphere of the interrogation.

The statements made by Beasley as to his knowledge of the combination to the lock box, and whether or not he owned a similar lock box were suppressed by the district court. The district court noted that Beasley had been arrested, was in jail for more that thirteen days, his attorney had entered their appearance in the case, and he had appeared in court. The Magistrate then reasoned that because of those factors Beasley should have been advised of his rights before being asked about anything beyond his consent to search. Though the statements were suppressed, by forcing Beasley to comment on his ownership of the lock box the officers impermissibly influenced Beasley's ability to refuse consent, rendering that consent involuntary. Beasley was never advised of his *Miranda* rights prior to his consent, nor can it be proven he felt free to refuse consent. Moreover, when questioned about the lock box, Beasley did not immediately consent but rather alternately remained silent, denied ownership, and then denied knowing the combination. Finally, Beasley was refused the right to confer with his attorney or to have counsel present.

Six of the ten factors courts have listed as pertinent to voluntariness are implicated here - absence of *Miranda*, Beasley's lack of awareness of his rights, a

Appellate Case: 11-2460    Page: 36    Date Filed: 09/26/2011 Entry ID: 3832991

lengthy two-week detention, a custodial setting in an interrogation room, a non-public

interrogation, and absence of silent acquiescence. These factors combined with the

officer's persistent questioning and refusal to acknowledge Beasley's Fifth and Sixth

Amendment rights, rendered the interrogation coercive. Because law enforcement

agents failed to *Mirandize* Beasley and coerced his consent to search the cameras and

related equipment, Beasley's consent was involuntary and should have been excluded

from evidence.

### C. The evidence derived from the consent to search should have been suppressed because Beasley's identification of the camera bag and recording equipment was testimonial and made without the protections of *Miranda*.

The district court correctly suppressed Beasley's January 19, 2009

identification of the recording equipment, however, it erred by failing to suppress all

evidentiary fruit from that identification. The district court held that while the

statements should be suppressed, the fruits of the statements could come in, as the

statements themselves were not involuntary. However, Beasley's claim of ownership

of the recording equipment was coerced, and therefore the recording equipment itself

must also be excluded as a poisoned fruit of a coerced statement. Evidence derived

from coerced statements must be suppressed: although the "introduction of the non-

testimonial fruit of a voluntary statement...does not implicate the Self-Incrimination

clause," the Supreme Court requires "the exclusion of the physical fruit of actually

Appellate Case: 11-2460    Page: 37    Date Filed: 09/26/2011 Entry ID: 3832991

coerced statements." *Patane*, 542 U.S. at 643, 644. Beasley was in custody, was interrogated, and his statements were made in response to law enforcement agents' direct questions. Therefore, the evidence Beasley identified was poisoned fruit from the poisoned tree of a coerced statement.

### D. Beasley's consent to search form was testimonial and required the protections of Miranda, therefore the form and all evidence derived therefrom should have been suppressed.

"The Fifth Amendment privilege against self-incrimination [also] applies to *acts* that imply assertion of fact." *United States v. Hubbell*, 530 U.S. 27, 37 (2000) (emphasis added). An act of communication is testimonial when it "explicitly or implicitly relate[s] a factual assertion or disclose[s] information," or whenever the conduct reflects the actor's communication of his thoughts to another." *Id.* (citing *Doe v. United States*, 487 U.S. 201, 209-10 (1988)); *Pennsylvania v. Muniz*, 496 U.S. 582, 595 n.9 (1990) (citing *Doe*, 487 U.S. at 209-10). The Fifth Amendment protects defendants from the prosecution's use of such testimonial acts to ensure that " a person [is not] compelled to be a witness against himself." *Hubbell*, 530 U.S. at 37. By signing the form consenting to the search of the recording equipment Beasley implied a statement of fact - namely that the equipment was his and that it was once in his possession and control. Typically acts are not protected by the Fifth Amendment as they are considered non-testimonial. However, an act such as this

28

"communicate[s] information about [the evidence's] existence, custody, and authenticity." which "entail[s] implicit statements of fact," something the Supreme Court has made clear is protected by the Fifth Amendment. *Hubbell*, 530 U.S. at 37.

Acts which reveal personal or physical characteristics alone (i.e. blood or handwriting) are considered non-testimonial. *Doe*, 487 U.S. at 210. However, assertions involving a witness's knowledge are testimonial. *Id*. "The definition of testimonial evidence...must encompass all responses to questions that, if asked of a sworn suspect during a criminal trial, could place the suspect in the cruel trilemma...of self-accusation, perjury or contempt." *Muniz*, 496 U.S. at 597, 595. Violations of the Fifth Amendment privilege against self-incrimination are remedied by exclusion. *Chavez v. Martinez*, 538 U.S. 760, 790 (2003).

Though consent forms are typically non-testimonial, the particular form Beasley signed did, in fact, involve his personal "implied assertion of fact." Beasley's form explicitly acknowledged his ownership, possession, and control of the recording equipment. Claiming to own recording equipment which has incriminating records contained within is indeed testimonial, as it reveals Beasley's state of mind. Beasley was compelled to acknowledge ownership of this incriminating evidence without benefit of *Miranda* warnings, violating his Fifth Amendment rights. Therefore, because Beasley's coerced identification of the equipment violated his

29

privilege against self-incrimination, the consent form and all evidence derived therefrom should have been suppressed.

Regardless of whether Beasley's self-incriminating claim of ownership was uttered verbally or communicated through a non-verbal act, it was testimonial. Because his inadmissible claim of ownership of the recording equipment and his consent to search that equipment are necessarily inextricable, all should have been suppressed. But even if the consent and claim of ownership can be deemed separate expressions, and even if the consent is found by a totality of the circumstances to have been voluntary[7], still, because the evidence was fruit of Beasley's poisoned claim of ownership, the evidence should nevertheless have been excluded.

**E. The district court erred in admitting Beasley's statements from January 5, 2009 because the entire encounter was custodial and his *Miranda* warnings were improperly delayed.**

Officers arrived to Beasley's store unannounced on January 5, 2009, the store was cleared of employees and customers, and subsequently the officers escorted him to the police station. Beasley was not read his *Miranda* rights until an hour-and-a-half into the encounter.

The encounter between Beasley and Detectives Guinn and Cavaletti on January 5, 2009 was coercive and all statements made were involuntary, therefore all evidence

---

[7]Beasley maintains, however, that his consent to search was not, in fact, voluntary, and was coerced, as demonstrated by the totality of the circumstances.

Appellate Case: 11-2460    Page: 40    Date Filed: 09/26/2011  Entry ID: 3832991

derived from that encounter should have been suppressed. The totality of the circumstances show that Beasley was not free to leave when he was interrogated by these officers at his place of business and at the police station. Though he was eventually read his *Miranda* rights, Beasley's subsequent statements were nevertheless involuntary; therefore, all statements should have been suppressed.

Custodial interrogation "blurs the line between voluntary and involuntary statements," therefore certain warnings must be given to protect defendants from being compelled to incriminate themselves. *Dickerson v. United States*, 530 U.S. 428, 435 (2000). *Miranda* warnings must be given "when there has been such a restriction on a person's freedom as to render him in custody." *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2000). A defendant must be read his *Miranda* warnings "before interrogation begins [,] when a suspect is taken into custody or otherwise significantly deprived of his freedom of action." *United States v. Carter*, 884 F.2d 368, 370 (8th Cir. 1989).

Determining whether a defendant's restriction is the requisite equivalent to a "formal arrest" requires a totality of circumstances test, considering whether a reasonable person would have felt free to leave; factors include: 1) whether the defendant was told he was free to leave or that he would not be arrested; 2) whether he had unrestrained freedom of movement during the interview; 3) whether he

31

initiated the interview or responded to questioning; 4) whether police were deceptive; 5) whether the atmosphere was police-dominated; 6) whether the interview concluded with the defendant's arrest. *LeBrun*, 363 F.3d at 720 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)); *United States v. Galceran*, 301 F.3d 927, 929 (8th Cir. 2002).

Although the Eighth Circuit has stated that "no one factor is necessarily dispositive" (*Galceran*, 301 F.3d at 930), it nevertheless has emphasized the significance of two factors: 1) whether officers told the defendant he was "free to leave," and 2) whether officers arrested the defendant at the conclusion of the interview or even that same day[8]. *LeBrun*, 363 F.3d at 722 (citing three Eighth Circuit cases finding that defendants were not in custody for the reasons that they were 1) told they were "free to leave," and 2) were not arrested that same day; see *Galceran*, 301 F.3d at 931 (per curiam); *Thatsaphone v. Weber*, 137 F.3d 1041 (8th Cir.), *cert. denied*, 523 U.S. 1130 (1998); *Jenner v. Smith*, 982 F.2d 329 (8th Cir.), *cert. denied*, 510 U.S. 822 (1993)).

---

[8] In fact, the Eighth Circuit in *Galceran* emphasized that when a defendant is not arrested "at the interview's conclusion," or even that same day, that is strong evidence that the interview was not custodial; they explicitly hold: "lack of arrest is a very important factor weighing against custody." *Galceran*, 301 F.3d at 931 (internal quotations omitted).

32

The district court found that *Miranda* warnings were not necessary when Beasley was approached and interviewed at his place of business. MRM, 22. The court noted that he was not handcuffed, guns were not drawn by the officers, and no threats or promises were made. MRM, 22. In addition, the district court reasoned that because Beasley was eventually *Mirandized* and waived his rights, his statements at the station were also voluntary. MRM, 23. However, this reasoning is incorrect because one does not have to be put in handcuffs at gun point in order to be in custody. Also, the mere lack of explicit statements promising or threatening anything, does not mean police procedures are not coercive. Furthermore, *Miranda* rights must be given "before the interrogation begins when a suspect is. . significantly deprived of his freedom." *Carter*, 884 F.2d at 370. "Involuntary post-waiver statements 'cannot be allowed into evidence.'" *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980).

**1. Beasley was in custody from the moment the officers arrived at his place of business on January 5, 2009.**

The totality of the circumstances show that Beasley was in custody and therefore the officers were required to give him his *Miranda* warnings. Because they failed to do so the district court erred in allowing the statements into evidence. At no point was Beasley told by the officers that he was free to leave or free to terminate questioning. Furthermore, he was placed under arrest at the end of the interrogation

33

on January 5, 2009. Beasley was in custody from the moment the officers arrived at Gamestation Sector 19, as his freedom was immediately restricted, however, his *Miranda* warnings were not given until an hour-and-a-half into the encounter.

The fact that the interrogation began at Beasley's place of business is irrelevant to the determination of whether or not he was in custody. Where "an interrogation takes place does not conclusively establish the presence or absence of custody." *Carter*, 884 F.2d at 371 (noting "with approval a case from the Fifth Circuit finding a custodial setting at the suspect's place of business."). Instead, the determination of whether one is in custody depends on whether the totality of the circumstances demonstrate that the person was not free to leave. *LeBrun*, 363 F.3d at 720.

Factors to which this court looks include: whether the defendant 1) was "repeatedly told...he would not be arrested that day"; 2) was told he could leave at the end of their interview; 3) "voluntarily acquiesced to requests to respond to questions" when he "voluntarily drove to the police station"; 4) was obviously not coerced during the interview, as demonstrated by a video or tape recording of the session or some other evidence; 5) was not overcome by a "police dominated" setting, as demonstrated by being questioned in a room not "normally used for custodial interrogations"; 6) "was not arrested at the interview's conclusion." *Galceran*, 301 F.3d at 930-31.

Appellate Case: 11-2460   Page: 44   Date Filed: 09/26/2011 Entry ID: 3832991

Armed officers arrived to Beasley's store unannounced, showed their badges, informed him that he was being investigated, and the store was cleared of employees and customers. The officers then took Beasley to Police Headquarters in their vehicle for questioning regarding the accusations made against him. He was never told that he would not be arrested that day or that he was free to leave at the end of the interview. Additionally, the entire encounter was police dominated: Beasley did not voluntarily deliver himself to the police station but rather was transported via police vehicle by armed officers; likewise, two officers interrogated Beasley in a small room used for interrogating criminal suspects about his involvement in child-molestation accusations. Perhaps most importantly, Beasley was arrested immediately at the interview's conclusion, a factor that this court weighs heavily when determining whether a suspect was in custody. *Galceran*, 301 F.3d at 931.

The district court failed to see that based on the totality of the circumstances, Beasley could not have reasonably believed he was free to leave. Though he was not put in handcuffs, he certainly was not told at any point that he was free to leave. More importantly, when the store was cleared of customers and employees and only Beasley and the officers remained, any reasonable store owner would have felt he did not have a choice in cooperating with the officers requests. Any reasonable person would have simply acquiesced as he did, rather than being handcuffed and forcibly

Appellate Case: 11-2460    Page: 45    Date Filed: 09/26/2011 Entry ID: 3832991

removed. Being isolated with the two officers and no allies caused this encounter to suddenly become police dominated. Though this encounter was during normal business hours when the store is normally open to the public, here the store was cleared and the officers interrogated Beasley alone. In addition, he was not merely invited to visit the officers at the station on his own time; rather, after having been subjected to two-on-one police interrogation, he was removed from work, required to leave his store in another's care, then transported across town to Police Headquarters by an armed officer in a police vehicle with another police vehicle following.

Beasley was in custody from the very beginning of this encounter. Furthermore, he remained in custody while being transported to the police station and while being interrogated by two officers in a small interrogation room used for criminal defendants. He was arrested immediately at the end of the interrogation even though no new incriminating evidence had been uncovered, this suggests the officers intended to arrest him even before their arrival to Gamestation. This fact further demonstrates that the entire encounter was intended by the officers to be custodial, and, in fact, was custodial.

**2. The district court erred in finding Beasley's post-interrogation *Miranda* warnings sufficient.**

36

The district court held that the *Miranda* warnings given to Beasley at the station and his subsequent waiver rendered the statements he made at the station voluntary. However, *Miranda* warnings must be given "before the interrogation begins when a suspect is . . . significantly deprived of his freedom." *Carter*, 884 F.2d at 370. If officers should realize that a suspect "reasonably could regard himself as being in custody, . . . *Miranda* warnings [a]re in order." *Id.* at 373. Likewise, "*Miranda* safeguards come into play whenever a person in custody is subjected either to express questioning or its functional equivalent[,] [such as] . . . any words or actions on the part of the police. . . that the police should know are reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 300-01. An hour-and-a-half into the encounter the officers finally read Beasley his *Miranda* rights, which he waived. Regardless, involuntary post-waiver statements "cannot be allowed into evidence." *Id*. Determining whether a post-waiver statement is voluntary involves a consideration of the "surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements." *Oregon v. Elstad*, 470 U.S. 298, 318 (1985).

When making this determination this court looks to whether the setting was custodial, meaning whether the person was: isolated, in a police dominated atmosphere, told he was free to leave or not answer questions, and whether the

37

investigation had focused on this suspect prior to this time. *Carter*, 884 F.2d at 370-72. In addition, this court looks to whether officers confronted the suspect with the accusations and evidence against him prior to *Miranda* warnings and any incriminating statements. *Id*. at 372. Finally, this court looks to whether the interrogation lasted for more than one hour. *Id*.

The moment the officers restricted his freedom and began interrogating him at Gamestation, Beasley should have been read his *Miranda* rights. He was interrogated by law enforcement in his place of business. This was rendered custodial by the nature of the "surrounding circumstances," the police officers dominated the environment, excluded Beasley's allies, evacuated the store, never told Beasley he was free to leave, and sought him out specifically because he was the focus of their investigation. In addition, the officers confronted Beasley with the accusations lodged against him. Further, the officers interrogated him for more than an hour prior to *Miranda*, after which he made incriminating statements about needing "help" and about past accusations. The officers should have known Beasley "reasonably could regard himself as being in custody." He was removed from his store during normal business hours after clearing it of employees and customers and the officers questions and actions were designed to elicit his consent and any other incriminating evidence they could elicit, further necessitating *Miranda*.

38

The *Miranda* warnings should have been read to Beasley prior to any restriction of his freedom and any police interrogation regarding the accusations against him. Because the encounter was rendered custodial the moment the officers arrived at Gamestation on January 5, 2009, and because the totality of the circumstances demonstrate that a reasonable person in Beasley's position would not feel free to leave or refuse consent, all statements, including mention of prior accusations and request for help, are involuntary despite the eventual *Miranda*, and therefore must be excluded.

## II. THE DISTRICT COURT ERRED IN DENYING BEASLEY'S MOTION FOR A BILL OF PARTICULARS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 7(f).

The district court erred in finding no Bill of Particulars was needed. The indictment in this case failed to specify information essential to the preparation of the defense. The time frames provided in the indictment for the alleged abuses, in some instances, span several years, and thus lack particularity. Furthermore, the time frames for the alleged abuses exceed the time frames that any evidence shows misconduct occurring. Counts I through VII of the Second Superceding Indictment list a time frame beginning on March 1, 2006 and ending on January 5, 2009, a period of nearly three years. Count VIII states a time period of April 11, 2002 to January 5, 2009, a period of almost seven years. These time frames are so broad and lacking in

Appellate Case: 11-2460     Page: 49     Date Filed: 09/26/2011 Entry ID: 3832991

specificity that Beasley was unable to fully prepare for trial or avoid or minimize the dangers of surprise at trial. Also, without more specific dates, the indictment would not allow Beasley to raise a double jeopardy defense in future prosecutions.

A Third Superceding Indictment was filed on January 27, 2011. However, this indictment failed to cure any of the issues which necessitated a bill of particulars. The Third Superceding Indictment only named previously unidentified victims, but failed to address the overly broad time frames. In addition, the district court did not rule on the motion for a bill of particulars until March 11, 2011, after the Third Superceding Indictment had been filed.

A "trial court has broad discretion in granting or denying a bill of particulars." *United States v. Stephenson*, 924 F.2d 753, 762 (8th Cir. 1991). Furthermore, in order "[t]o establish reversible error from the denial of such a motion, a defendant must show that he was actually surprised at trial and suffered prejudice by the denial." *Id*. citing *United States v. Arenal*, 768 F.2d 263, 268-69 (8th Cir. 1985). An indictment is sufficient only if it "contains the elements of the offense charged, and fairly informs a defendant of the charge against him which he must defend, and . . . enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). In determining whether an indictment "sufficiently apprises the defendant of the charges, a court can

40

consider the charges' complexity, the indictment's clarity, and the availability of discovery." *United States v. Caputo*, 288 F.Supp.2d 923, 925 (N.D. Ill. 2003).

When an indictment is so vague that it does not allow the defendant adequately to prepare his defense, a bill of particulars under Rule 7(f) may be required. FED. R. CRIM. P. 7(f). A bill of particulars informs a defendant of "the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at trial," and to preserve his ability to raise a defense of double jeopardy in future prosecutions. *United States v. Hernandez*, 299 F.3d 984, 989-90 (8th Cir. 2002). "The function of a bill of particulars is to 'cure omissions of details that might enable the defendant to prepare his defense.'" *United States v. Perkins*, 748 F.2d 1519, 1526 (11th Cir. 1984), quoting *United States v. Haas*, 583 F.2d 216, 221 (5th Cir. 1978).

This court has held that a "minor variance between the date of the offense as charged in the indictment and as proven at trial is constitutional so long as the indictment is sufficient to apprise the defendant of the charges against him and to allow his counsel to prepare for trial effectively." *United States v. Lee*, 232 F.3d 653, 656 (8th Cir. 2000). This court has applied this rule to conclude that a one-month time span for a one-week-long offense was adequately particular when the defendant was the primary care giver for the minor victim one week during the month of June,

because he could certainly determine from his own recollection which week that occurred.  *Id*.  The Eighth Circuit has also held that an indictment citing a three-month time frame for a continuous offense that was combined with an exact description of the offense, as well as an exact address for the location of the offense, was sufficiently particular.  *Taran v. United States*, 88 F.2d 54, 57 (8th Cir. 1937). Although "fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements" because "children of tender years [. . . ] are simply unable to remember exact dates and times, . . . certainly, prosecutors should be as specific as possible in delineating the dates and times of abuse offenses."  *Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005).

### A. Count VIII of the indictment is overly broad and therefore unconstitutional.

In Count VIII, Beasley was not charged with a particular offense during a one week, one month, or even three-year period in which exact acts, times, locations, and occurrences are described with particularity.  Rather, he was charged in Count VIII of the indictment with committing offenses of a sexual nature against a minor (M.T.) during a period "between[,] on[,] or about April 11, 2002, and January 5, 2009" - a time span of nearly seven years.  This overly-broad span of time is problematic because it both caused the Beasley to be surprised at trial and caused him to suffer prejudice.  No evidence was presented which demonstrated that any alleged abuses

42

occurred during a continuous period of seven years. Indeed, a period of seven years is so overly broad that Beasley had no way to present an alibi defense at trial. This caused surprise at trial which did result in Beasley suffering prejudice. Moreover, even though children may be unable to remember exact dates and times, a child will likely be able to pin down, at least within the span of a few years, when alleged abuses occurred. The overly-broad time span cited in the indictment in Count VIII is therefore unconstitutional and the district court should have granted the motion for a bill of particulars.

### B. Counts I-VII of the indictment are overly broad and therefore unconstitutional.

Likewise, in Counts I-VII of the indictment, Beasley was charged with various sexual offenses against various minors during a period "between[,] on[,] or about March 1, 2006, and on or about January 5, 2009." Again, this time frame is overly broad and therefore unconstitutional. Like the problems with Count VIII, as cited above, which include Beasley's inability to prepare an adequate defense due to the excessive time frame during which the alleged abuses occurred, here, too, Beasley was unable to adequately prepare a defense for such a long span of time. A bill of particulars stating with more specificity the dates of the alleged offenses would have cured the problems with the indictment and enabled Beasley to prepare an adequate

43

defense.  Therefore, the district court erred in denying Beasley's motion for a bill of particulars.

**C.    The overly-broad indictment violated Beasley's Fifth Amendment rights because it exposes him to risk of double jeopardy.**

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars a second prosecution for the same offense after acquittal or conviction, and it bars multiple punishments for the same offense.  *United States v. Petty*, 62 F.3d 265, 266 (8th Cir. 1995), citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  Because the Government failed to provide the relevant details as to the dates and locations involved with the alleged misconduct, Beasley could not determine the precise nature of the allegations against him, and therefore would be unable to determine whether any future prosecutions for the same or similar conduct would be duplicitous and barred by the Double Jeopardy clause.

Because the overly-broad indictment did not provide sufficient information to enable Beasley to be able to prepare an adequate defense or protect him from double jeopardy, the district court erred by denying Beasley's motion for a bill of particulars.

**III. THE DISTRICT COURT COMMITTED PROCEDURAL ERROR WHEN APPLYING TWO SENTENCING ENHANCEMENTS.**

The Court of Appeals reviews a sentence for procedural . . . reasonableness under an abuse of discretion standard.  *Gall*, 552 U.S. at 46.

44

## A. The district court erred by applying the sentencing enhancement pursuant to U.S.S.G. §2G2.1(b)(1)(A).

The district court erroneously enhanced Beasley's Guideline calculation pursuant to U.S.S.G. §2G2.1(b)(1)(A) because the dates the videos were produced cannot be accurately determined and no direct evidence exists to show B.E.N. was under the age of 12. Furthermore, the district court incorrectly reasoned that though there was no direct evidence the court could reasonably infer that B.E.N. was under twelve when the images were produced. Tr., 701.

This enhancement applies "[i]f the offense involved a minor who had . . . not attained the age of twelve years." U.S.S.G. §2G2.1(b)(1)(A). In *United States v. Densberger*, 285 Fed.Appx. 926 (3rd Cir. 2008), the court of appeals found that the district court did not err in applying this enhancement and that the victim's testimony was reliable. *Id*. at 929. In that case the defendant had produced videos depicting him engaging in sexual activity with his three adopted sons. *Id*. at 927. The district court noted that in addition to the date stamp on the videos, there was direct evidence establishing that these videos were made prior to the victim attaining the age of twelve. *United States v. Densberger*, No. 00295, 2007 WL 1099052, at *5 (M.D.Pa. 2007). The district court noted that no evidence was offered to dispute the date of the video and the victim stated that the molestation began when he was nine and the

45

videotaping began when he was eleven years old.  *Id*.  The district courts holding was affirmed by the court of appeals.

Here, there is no such conclusive evidence and the enhancement should not have been applied to Beasley's sentence.  Indeed, the prosecution's expert stated that he could only testify as to the camera's date and time on the day he turned on the camera.  Tr., 404.  This is because date and time on this camera can be reset manually.  Tr., 404.  There is no testimony from the victim as to when the offenses occurred.  B.E.N. stated that he spent time at all of the Gamestations, the last of which did not close until after Beasley was arrested in January of 2009.  Tr.  535, 570-71.  As B.E.N. turned twelve on June 18, 2008, this left almost a six month window during which the videos could have been produced.  The district court erred in applying this enhancement.

### B. The district court erred by applying the sentencing enhancement pursuant to U.S.S.G. §2G2.1(b)(5).

The district court erred in enhancing the Guideline range pursuant to U.S.S.G. §2G2.1(b)(5), as Beasley did not exercise care, custody, or supervisory control over the minors in counts I through VI.

This enhancement applies "[i]f the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant." U.S.S.G. §2G2.1(b)(5).  This

46

section is to have broad application, the examples listed are "teachers, day care providers, baby-sitters, or other temporary caretakers." U.S.S.G. §2G2.1, comment. (n.3). In order for this enhancement to apply, the offense must involve "a minor entrusted to the defendant." *Id.*

The district court reasoned that as the owner of the game store Beasley was in charge, and because he made the decision to host lock-ins and got parental consent the children were under his custody. Tr., 703-04. However, the fact is that a store owner does not take on a custodial role or even a care-taking role of customers in his store. Though these were somewhat unusual store hours, the relationship between Beasley and the customers that frequented his store did not change. The store was open to the public, and during store hours customers were free to come and go as they pleased. Though minors were the main attendees at the lock-ins, customers of all ages were welcome. In addition, the parents of the children who frequented the store were free to come and go at any point during regular business hours as well as during lock-ins. The relationship between Beasley and the minors was not in any way familial, his role in their lives was not a fatherly, or even a brotherly role. He was not their teacher or their babysitter, and indeed did not have any custodial, care-taking, or supervisory role in their lives. The parents who consented to the lock-ins did not entrust their children to Beasley's care. A store owner simply does not take on a

Appellate Case: 11-2460    Page: 57    Date Filed: 09/26/2011 Entry ID: 3832991

custodial or even a care-taking role for the customers in his store, therefore, this enhancement should not have been applied by the district court.

In *United States v. Martin*, 291 Fed.Appx. 765 (6th Cir. 2008), the court determined that when a modeling instructor produced child pornography the minors were under his supervisory control. *Id*. at 768. This was because the relationship was one of "entrustment by the parents." *Id*. Furthermore, he held himself out as assisting the minors "in hopefully becoming models at some point in order to violate the trust that was given to him." *Id*. This is not similar to Beasley's relationship to store customers. Beasley was not in a position of trust or guidance when it comes to the customers of Gamestation and this enhancement should not apply.

IV. THE DISTRICT COURT ERRED BY IMPOSING A SUBSTANTIVELY UNREASONABLE SENTENCE, BECAUSE THE SENTENCE IS GREATER THAN NECESSARY TO ACCOMPLISH THE AIMS OF SENTENCING SET FORTH IN 18 U.S.C. § 3553(a).

The totality of the circumstances in this case demonstrates that the district court sentenced Beasley to a term of imprisonment "greater than necessary" to achieve the aims of sentencing. *See* 18 U.S.C. § 3553(a) (2006). Sentencing courts must impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, deter criminal conduct, protect the public, and provide the defendant with effective correctional treatment. *Id*. The court should also consider the nature and circumstances of the offense and the defendant's history

48

and characteristics. *Id.* In light of these factors, the sentence of 3,480 months (290 years) of imprisonment imposed on Beasley was substantively unreasonable and merits reversal, with directions to impose a shorter sentence.

### A. The district court abused its discretion by imposing a sentence of 3,480 months (290 years) of imprisonment, because the court failed to properly consider all 18 U.S.C. §3553(a) factors.

The Supreme Court requires district courts to fully consider all of the §3553(a) factors when fashioning a sentence. *Gall* 552 U.S. at 46. Unlike the sentencing guidelines, which are advisory, consideration of these factors is mandatory. *United States v. Booker*, 543 U.S. 220, 259 (2005). This requirement applies whether or not the district court imposes a sentence within or outside of the advisory guideline range. *See United States v. Carca-Carrasquillo*, 483 F.3d 124, 132 (1st Cir. 2007). A district court abuses its discretion when it neglects to fully consider a relevant factor, gives significant weight to an improper factor or considers the appropriate factors but in weighing those factors commits a clear error of judgment. *United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005). Sentences are reviewed for reasonableness in light of the full range of the §3553(a) factors. *Booker*, 543 U.S. at 245. In this case the district court failed to meaningfully consider the defendant's history and characteristics and committed clear error by affording far to much weight to some factors and little to no weight to other factors.

49

The district court failed to give enough weight to Beasley's age. The risk of offending in a sexual manner decreases significantly with age. At the time of sentencing Beasley was 43 years old. Had the district court run the terms of imprisonment for each count concurrently, Beasley would still have been in his 70s upon release, and therefore less likely to re-offend.

Furthermore, the district court did not give proper weight to Beasley's criminal history. Prior to being arrested for this offense, he had never served any period of incarceration and does not have any prior criminal convictions. Also, Beasley has a history of steady work and served in the United States Navy. The district court gave too much weight to the allegation that Beasley lied when testifying at trial. "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York*, 401 U.S. 222, 225 (1971). Beasley had the right to testify and he had the right to maintain his innocence. The district court made an allegation that he lied during his testimony, and gave this allegation far too much weight when fashioning Beasley's sentence. Because the district court committed clear error by improperly weighing the §3553(a) factors Beasley's sentence is substantively unreasonable and merits reversal, with directions to impose a shorter sentence.

This sentence is clearly "greater than necessary." Though the crimes that Beasley was found guilty of are serious, there unfortunately are much worse crimes.

50

It begs the question: what will be done to punish people found guilty of something far worse? After all, the punishment should reflect the seriousness of the crime, and if these crimes are worthy of a 290 year sentence, how will people found guilty of worse crimes be punished? Furthermore, even if this sentence were to be cut in half, to 145 years, Beasley would still spend the rest of his life in prison, even that is greater than necessary. *But see United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008). The court has an obligation to impose a sentence that is "sufficient, but not greater than necessary," this was not done here.

### V. THE DISTRICT COURT ERRED BY ALLOWING DOUGLAS, A LAY PERSON, TO GIVE OPINION TESTIMONY AS TO THE AGES OF GAMESTATION CUSTOMERS.

According to "Federal Rule of Evidence 602 . . . a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. However, Rule 701 states that a witness not testifying as an expert may offer opinion testimony so long as the testimony is 'rationally based on the perception of the witness.'" *United States v. Faulkner*, 636 F.3d 1009, 1018 (8th Cir. 2011)(quoting Fed. R. Evid. 701(a)).

"Personal knowledge or perceptions based on experience is sufficient foundation for lay opinion testimony." *United States v. Smith*, 591 F.3d 974, 982 (8th Cir. 2010). Douglas, a formed employee of Gamestation, testified for the prosecution at trial. Tr., 442. During his direct testimony he was asked about the ages of the customers at Gamestation, Beasley objected to this question. Tr., 442. The district court allowed

Appellate Case: 11-2460    Page: 61    Date Filed: 09/26/2011 Entry ID: 3832991

Douglas to answer, although no testimony established that he had personal knowledge or that the information was rationally based on his perception.

In *Faulkner* the witness gave testimony concerning what she believed happened after she dropped off money. *Faulkner,* 636 F.3d at 1018. The testimony was allowed in because it was "rationally based on her perception." *Id*. The court determined that because the witness "made it clear in her testimony that she merely "[b]elieved" that Faulkner took the money and even explained why she believed that," the testimony should be allowed in. *Id*. In this case when Douglas testified as to the ages of Gamestation customers, no foundation was laid. There was no testimony establishing that Douglas had personal knowledge or that this information was rationally based on his perception. In addition, there was nothing clarifying that this was simply his belief, and not fact. Nothing was offered to show why or how Douglas may have had any insight into the ages of the customers at Gamestation. Indeed, during trial when discussing whether another witness could testify as to what he saw on a video the Magistrate stated "I know a lot of adults who could pass for 14. So I am not sure that it is enough for him to say 'Yeah, I looked at it. It looks like a kid to me.'" Tr., 329. Similarly, Douglas did not have any personal knowledge or special ability to otherwise tell how old someone is, and this testimony should not have been allowed in by the district court.

Appellate Case: 11-2460     Page: 62     Date Filed: 09/26/2011 Entry ID: 3832991

## VI. THE DISTRICT COURT ABUSED ITS DISCRETION IN GIVING THE EIGHTH CIRCUIT MODEL REASONABLE DOUBT INSTRUCTION WHICH INCLUDES THE "MERE POSSIBILITY OF INNOCENCE" LANGUAGE.[9]

The Court of Appeals "reviews a district courts decision to grant or deny a request for a particular jury instruction under an abuse of discretion standard, taking into account the full context of the charge. *Whitehead*, 176 F.3d at 1037 (citing *Tucker*, 137 F.3d at 1036; *Dreamer*, 88 F.3d at 658). The reasonable doubt standard "plays a vital role in the American scheme of criminal procedure." *In re Winship*, 397 U.S. 358, 363 (1970). Beasley contends that the "mere possibility of innocence" language within the Eighth Circuit's reasonable doubt jury instruction is so ambiguous, that there is a reasonable likelihood that jurors will mistakenly interpret it, thereby holding the government to a lower burden of proof. The Eighth Circuit Model Instruction on Reasonable Doubt states:

> A reasonable doubt is a doubt based upon reason and common sense, *and not the mere possibility of innocence*. A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond

---

[9] Beasley acknowledges that this Court has ruled that the "mere possibility of innocence" language contained within the reasonable doubt instruction is not an abuse of the district court's discretion. *United States v. Rosso*, 179 F.3d 1102 (8th Cir. 1999).

53

all possible doubt.

Eighth Circuit Model Jury Instruction: Eighth Circuit, §3.11 (2003)(emphasis added). This instruction does not clearly indicate whether "the mere possibility of innocence" that is excluded from reasonable doubt refers to any possibility of innocence that falls short of certainty, or whether "the mere possibility" only excuses the government from overcoming meager, fanciful or irrational possibilities of innocence.

This Model Instruction readily incites the erroneous understanding that any possibility of innocence, no matter how strong, fails to constitute reasonable doubt because it remains a "mere possibility." This reading of the instruction substantially and unconstitutionally lightens the government's burden. So long as contradictory evidence fails to make a defendant's innocence certain, it fails to surpass the "mere possibility of innocence" standard. This model instruction therefore excludes this from the definition of reasonable doubt, resulting in the incorrect assumption that the defendant must be found guilty. This level of proof violates the Due Process threshold. A defendant is entitled to acquittal if the government's proof fails to overcome at least a "real possibility" of the defendant's innocence. *See Victor v. Nebraska*, 511 U.S. 1, 27 (1994)(Ginsberg, J., concurring in part and concurring in judgment). The defendant need not prove his innocence, but rather the government

Appellate Case: 11-2460     Page: 64     Date Filed: 09/26/2011 Entry ID: 3832991

must prove his guilt beyond a reasonable doubt.  This instruction as given muddies the water.

"A defendant is entitled to a specific jury instruction 'that conveys the substance of his request if his request is timely, it is supported by evidence in the case, and is a correct statement of the law.'" *Whitehead*, 176 F.3d at 1037(citing *Tucker*, 137 F.3d at 1036).  In this case, the defendant proposed the two following reasonable doubt instructions:

> (1)The burden is always upon the prosecution to prove guilt beyond a reasonable doubt.  This burden never shifts to a defendant for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.  The defendant is not even obligated to produce any evidence by cross-examining the witnesses for the government.

> It is not required that the government prove guilt beyond all possible doubt.  The test is one of reasonable doubt.  A reasonable doubt is a doubt based upon reason and common sense- the kind of doubt that would make a reasonable person hesitate to act.  Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

> Unless the government proves, beyond a reasonable doubt, that defendant has committed each and every element of the offense charged in the indictment, you must find defendant not guilty of the offense.  If the jury views the evidence in the case as reasonably permitting either of two conclusions - one of innocence, the other of guilt - the jury must, of course, adopt the conclusion of innocence.

55

Kevin O'Malley, et al., Federal Jury Practice and Instructions: Criminal §12.10 (Fifth ed. 2000).

> (2)A reasonable doubt is a doubt based upon reason and common sense. A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

These proposed jury instruction were timely offered and are correct statements of law, so the defendant was entitled to this instruction on reasonable doubt. *Whitehead,* 176 F.3d at 1037. Although this entitlement does not guarantee a particular formulation of a jury instruction, the conviction of the defendant can be reversed if the error causes prejudice. *Id.* Beasley contends that prejudice did occur in this case.

The instruction that was given by the district court was prejudicial in that it introduced the concept of "innocence." This language is inappropriate because the jury is not deciding upon the innocence of the defendant, but rather whether or not the government has met its burden of proof for guilt. This phrase improperly suggest that a possibility of innocence based on the evidence in this case would *not* be sufficient for an acquittal. This instruction introduces a term, *innocence,* that may

56

have the effect of shifting the government's burden in the eyes of the jury. Even the possibility that the jury may be looking for proof of innocence, rather than proof of guilt, makes this instruction prejudicial to the defendant.

"The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993). Beasley believes it was.

This model instruction therefore violated Beasley's Due Process and fair trial guarantees against conviction except upon a finding of all requisite facts beyond a reasonable doubt. *Sullivan*, 508 U.S. at 278. Therefore, his conviction should be reversed.

## CONCLUSION

For the above reasons this case should be remanded to the district court.

Appellate Case: 11-2460     Page: 67     Date Filed: 09/26/2011 Entry ID: 3832991

Respectfully submitted,


/s/ Nanci H. McCarthy
Nanci H. McCarthy
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
(314) 241-1255

ATTORNEY FOR DEFENDANT-APPELLANT


## PROOF OF SERVICE

I hereby certify that on September 26, 2011, I electronically filed the foregoing with the Clerk fo the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


/s/ Nanci H. McCarthy
Nanci H. McCarthy
Assistant Federal Public Defender

Appellate Case: 11-2460   Page: 68   Date Filed: 09/26/2011 Entry ID: 3832991

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(b), the undersigned hereby certifies that this Brief complies with the type-volume limitation.  The number of words contained in this Brief, typed in WordPerfect X5, is 13,586.

/s/ Nanci H. McCarthy
Nanci H. McCarthy
Assistant Federal Public Defender

59